The bill must be dismissed.

## Linn and others *vs.* Wheeler.

1. An injunction against a defendant to restrain him from receiving a sum of money in the hands of his attorney, or from permitting it to be paid to any one for him or on his behalf, will not be dissolved on motion of the attorney.

2. No one but a party to a suit can make any motion in it, except for the purpose of being made a party.

The bill in this case is filed by Edward N. Linn, Richard Philip, John G. Stanley, William B. Stanley and Alexander Philip, who together constitute the firm of R. Philip & Co., of Belleville, in the county of Essex, New Jersey, against Charles H. Wheeler and Charles H. Wheeler, junior, both of said township. It sets forth that on or about October 18th, 1869, they recovered judgment against Charles H. Wheeler for $230.25, besides costs of suit. That on December 24th, 1869, they issued execution thereon, which was returned to January Term, "no goods or lands, etc." That the judgment has never been paid or satisfied, and that there is due upon it $268.22, with interest. That Charles H. Wheeler, as the complainants have been in-

formed and believe, about September 17th, 1869, entered into an agreement in writing with the Montclair Railway Company in the form of a proposal to do work, grading of part of their road. That on or about September 10th, 1869, and after suit had been commenced by plaintiffs, said Wheeler went to the office of the company, and in an interview with one H. H. Fuller, said that he desired that the words "and Son" should be affixed to his signature to the proposal, and representing that he desired that his son should be interested with him in the contract. That Fuller, acting for the company, assented thereto and permitted Wheeler to make the addition to his signature to the proposal. That complainants have been informed and believe that the work was thenceforth done under those proposals, in the name of Wheeler and Son, but that Wheeler, after that alteration, continued ' to control the workmen and superintend the operations of the work as before. That they are informed and believe that a dispute arose between Wheeler and Son and the company, as to the amount of work done under the agreement, and as to the sum justly due to Wheeler and Son on account of the work. That thereupon Runyon and Leonard, as attorneys for Wheeler and Son, instituted for them a suit in the Supreme Court against the company, and recovered judgment for $1961.50 besides costs, and thereupon a writ of execution was issued to the sheriff of Essex county. That on or about May 26th, 1870, complainants commenced "supplementary proceedings" under the act entitled "an act to prevent fraudulent trusts and assignments," against said Charles H. Wheeler, which have been proceeded in, and that witnesses have appeared before the commissioner and testified concerning the matters which formed the ground of the reference, but that the examination is not yet completed. That on proof of the facts and circumstances required by the act, made to the judge by the oath of John Ettenborough, an order was made that Charles H. Wheeler refrain from receiving the money, or any part thereof, either from the company or

from Charles H. Wheeler, junior, or from any other person; and that Charles H. Wheeler, junior, should refrain from paying the money or any part thereof to Charles H. Wheeler, or any other person in his behalf, till further order be made in the premises. That those orders were dated June 6th, 1870, and were served upon Charles H. Wheeler and Charles H. Wheeler, junior. That the complainants have been informed and believe that subsequently to issuing execution against the company and the making of these orders, the company paid the sheriff of Essex the amount of the judgment, $1961.50, besides costs; and that the sheriff has paid the money over to Runyon and Leonard, complainants' attorneys. That the complainants greatly fear that Runyon and Leonard will pay over the entire amount of those moneys to said Charles H. Wheeler, junior, and that irreparable mischief will thereby be done to the complainants. The complainants further show that Charles H. Wheeler is entitled to the whole or a large part of that money to his own use; and that they are entitled to have their judgment satisfied out of it. The bill prays an injunction to restrain Charles H. Wheeler, junior, from receiving the money in the hands of the attorneys, or any part thereof, and to restrain Charles H. Wheeler and Charles H. Wheeler, junior, their agents, attorneys, and servants, from permitting said moneys, or any part thereof, to be transferred or paid to any person or persons in their behalf until further order. An injunction issued pursuant to the prayer of the bill.

The cause was argued on motion to dissolve or modify the injunction.

*Mr. T. Runyon* and *Mr. Leonard,* in support of the motion.

The Wheelers are the only defendants to the bill. There were, at the time of filing the bill and obtaining the injunction, *other persons* who, to the *knowledge of the complainants,* claimed all the money in the hands of the attorney of the plaintiffs in the railway suit, under and by virtue of an

order (in effect an assignment,) given by the Wheelers to them, March 21st, 1870.

The parties referred to are the commercial firm of Bryant and Co., mentioned in the affidavit of Henry W. Morehouse, submitted on their behalf on the argument of this motion.

Although the complainants knew of this claim on the part of Bryant and Co., they did not make Bryant and Co., (the firm doing business in the city of Newark), parties to the suit. But it will be perceived that the effect of the injunction in restraining the attorneys, from "permitting the said moneys, or any part thereof, to be transferred to any person or persons, on behalf of the said Charles H. Wheeler, and Charles H. Wheeler, junior," is to prevent the payment of money to Bryant and Co.

Charles H. Wheeler and Charles H. Wheeler, junior, having neither of them any interest in the moneys in the hands of the attorneys, will not, of course, answer the bill of complaint.

Messrs. Bryant an Co., not being parties to the bill, cannot answer the same. They are therefore compelled to come into court and ask, upon their affidavit of the facts in the case, that the injunction may be so modified as to permit them to receive from the hands of the attorneys the money which is their due.

They have therefore prepared (and caused to be served on the 27th of August last, upon the complainants' solicitor) an affidavit setting forth the circumstances under which they ask the modification of the injunction. Those circumstances are briefly these: that on the 21st of March last, Charles H. Wheeler, junior, was indebted to the firm in a large sum of money, namely, $1055.25 for groceries, feed, and grain, by the firm of Bryant and Co., furnished, sold, and provided to him before that, *and principally used by him in carrying on the work under the contract in the bill mentioned;* and being so indebted to the firm, and contemplating and *desiring further* credit for like supplies, *Charles H. Wheeler, junior, and his father, Charles H. Wheeler,* on the depo-

ncuts asking for pay (the deponent being one of the firm) for the bill then accrued, proposed to give to the firm an order on the claim against the Montclair Railway Company, in the bill mentioned, to secure to Bryant and Co., not only the money due to them at that time, ($1055.25), but such further sum as should accrue and become due to them from Charles H. Wheeler, junior, whether for groceries, feed, grain, cash advanced or otherwise, to which proposition Bryant and Co. then assented; and on that day, March 21st, 1870, they received from the Wheelers an order of that date on Runyon and Leonard, as attorneys in the suit against the railway company, for so much of the moneys coming to the Wheelers from the railway company as would be sufficient to cover the account of Bryant and Co., then existing against Charles H. Wheeler, junior, and whatever further indebtedness might be contracted as above mentioned by Charles H. Wheeler, junior, with Bryant and Co., for groceries, feed, grain, or other account up to the time of the receipt of the moneys by Bryant and Co., under the order. That the order was in writing, and is now in the possession of Bryant and Co. That after the making and receipt of the order, Bryant and Co. presented it to Runyon and Leonard on the same day, March 21st, 1870, in order that it might be by the attorneys accepted so far as usual in such cases, and on presenting the order to the attorneys, a note thereof was made by the senior partner of Runyon and Leonard, recognizing the right of Bryant and Co., under the order. That on the strength, credit, and faith of the order, Bryant and Co. gave further credit to Charles H. Wheeler, junior, for groceries, feed, and grain, some of which went to pay orders given by him to men who had worked under his contract, and advanced to him from time to time money ($150), some of which was borrowed to pay witnesses' fees in the railway suit, and other expenses therein, some to pay a license fee due to the government, and some to pay Charles H. Wheeler, junior's, necessary traveling expenses. That to the affidavit is annexed a true copy of their account. Further, that no

part of their claim has been paid, and that it all amounts to $1689.64, with interest, is due, and that they have no security for it, or any part of it except by the order. That the judgment recovered against the railway company, exclusive of costs, amounts to $1961.50, and bears interest from June 7th, 1870; that out of it is to come $250 for the fees of plaintiff's attorneys, over and above the taxed costs.

From this it appears that after paying the counsel fees of the suit, there will not remain enough money to pay Bryant and Co. the amount due, including interest, on their order.

The affidavit goes on to say, that John Ettenborough is, in the opinion of the deponent, the real owner of the judgment. That he knew at the time of filing the bill, of the existence of the claim of Bryant and Co., and knew it for a long time before that. That he employed counsel to draw the bill, and obtain the injunction, and that complainants have really, as the deponent believes, no interest in the claim, and took no part in the preparation of the bill or obtaining the injunction, and that Ettenborough, as they believe and are informed, employed counsel to conduct the supplementary proceedings above mentioned; and further, that in a recent conversation which Ettenborough had with the deponent, he told him that he was interested in the collection of the claim.

In response to this the complainants have presented only the affidavit of John Ettenborough, which, it will be perceived, in no sense denies any of the statements contained in the affidavit of Mr. Morehouse, of the firm of Bryant and Co., the affidavit above set forth. In this affidavit Mr. Ettenborough admits that in the conduct of this suit he is acting for the complainants (he says as attorney in fact), but it is to be observed he does not deny that he is the only person interested in the claim, nor does he allege that the complainants have any interest in the suit. He admits, but says that he did it as attorney in fact, that he employed counsel to conduct the supplementary proceedings, and says that he resides at Belleville, where the Wheelers reside

that he is acquainted with them; that they are father and son, and that they have resided in the same house for more than a year past, and that Charles H. Wheeler, junior, is unmarried. This, with a statement contained in the affidavit in reference to the delay or stoppage in the supplementary proceedings, is all that is contained in the affidavit.

It will be seen, then, that the complainants in this case at the time of the filing of the bill, and before that time, well knew that the claim of Bryant and Co. existed to the money in the hands of the attorneys. Knowing this, they also knew that the Wheelers had not, and could not have any interest in the fund, for all of it, over and above the counsel fees of plaintiffs' attorneys in the suit, was needed to pay Bryant and Co.; and yet this bill is filed against the Wheelers, who have no interest in the suit as above stated, and Bryant & Co. are not made parties to it. The conclusion is irresistible, that the bill and injunction were intended by the complainants as means of indirectly obtaining that which they could not have obtained directly. By restraining the Wheelers and their attorneys from paying away the money, they, of course, prevent the attorneys from paying Bryant and Co., who are lawfully entitled to receive it.

Under these circumstances, it is respectfully submitted that Bryant and Co. should have relief, and that the injunction should be so modified that Bryant and Co. may be permitted to receive their money.

*Mr. F. W. Stevens,* contra.

The complainants in this suit, inasmuch as they are judgment and execution creditors, are entitled to the relief they seek, if they can show equitable grounds for such relief. 1 *Stockt.* 465; 4 *Johns. C. R.* 671.

The bill charges fraud, and in consequence thereof, that the judgment recovered in the joint names of Charles H Wheeler and Charles H. Wheeler, junior, the defendants, is, in reality, the judgment of *Charles H. Wheeler alone.*

The firm of Bryant and Co., who are strangers to the suit

as brought, make a motion to dissolve the injunction issued, so far as to permit their claims upon said judgment to be satisfied. They base their claims upon an order alleged to have been given to them by Charles H. Wheeler, and his son Charles H. Wheeler, junior, upon Wheeler and Son's attorneys, Messrs. Runyon and Leonard. The date of this order was March 21st, 1870. It was an order on the claim against the Montclair Railway Company, (given pending the suit against said company) to secure to said firm not only the sum then alleged to be due them from Charles H. Wheeler, junior, viz. $1055.25, but such further sum as should accrue and become due to them from said Charles H. Wheeler, junior, which last mentioned sum amounted on August 12th, 1870, to $634.39, making the total amount alleged to be due the firm under said order, $1689.64.

The judgment against the said railway company, exclusive of costs, amounts to $1961.50. The difference between $1961.50 and $1689.64, is $271.86, and out of this residue Messrs. Runyon and Leonard request permission to deduct $250 for their counsel fees, leaving only $21.86 to be finally disposed of.

The order given to the said firm was presented to said attorneys on the same 21st day of March, 1870, and 'recognized' by said attorneys.

The insistment of the firm upon this motion, must doubtless be that they are the equitable assignees of a part of the said judgment, and in the absence of fraud their insistment would be proper, for a debtor may prefer one creditor to another.

The case of the complainants is based upon the fraud committed upon them. They submit, *that this is a fraudulent attempt to pay Charles H. Wheeler, junior's, debt with Charles H. Wheeler's money.*

*First.* The money is Charles H. Wheeler's. It is true that the claim was sued and judgment recovered in the name of father and son, jointly. But the affidavit of Hernando A. Fuller, annexed to the bill of complaint, shows

under what circumstances, and for what reasons, the son was brought into the contract.

It appears by this affidavit, that on July 17th, 1869, proposals in writing were made by Charles H. Wheeler, which were signed by said Wheeler alone, and then accepted by said Fuller on behalf of the company. Nearly two months afterwards, Wheeler went to the office of said railway company, and desired to change the contract by inserting therein, after his own name, the words "and Son."

The motives that prompted that change might have been either laudable or fraudulent. But what language could more clearly reveal a fraudulent contrivance to avoid the payment of a debt? "That his creditors were suing him out where he lived, and wanted to ruin him; he wanted it just fixed so that they could not come and damage him, or seize his property."

As against the persons this alteration was intended to prejudice, it is void; that is to say, as to the complainants the contract must still be regarded as the contract of Charles H. Wheeler alone.

But *secondly*, the debt is Charles H. Wheeler, junior's, (*i. e.* the debt of $1689.64 claimed to be due the firm of Bryant and Co.)

H. W. Morehouse, (of the firm of said Bryant and Co.), in his affidavit asserts this to be the case. He nowhere pretends that Charles H. Wheeler, the father, is said firm's debtor, but swears that everything was charged against the son.

But a distinction must be taken.

The firm's claim under the order is in part prospective, in part retrospective.

*1st, prospectively.* As to the supplies furnished subsequently to March 21st, 1870, (the time when the order was given), they may have been furnished in good faith by said firm, on the security of said order. If that were the case, their equity as to this part of their demand appears to be as great as that of the complainants.

*2nd, retrospectively.* No such grounds however can be

taken in reference to supplies furnished *prior* to March 21st, 1870. The firm (so we must conclude from H. W. More-house's affidavit) have given credit to the *son alone.* It would seem as if father and son might, as to at least a part of the claim, have been made jointly liable. Yet the firm elected to make the son their debtor, they cannot now hold the father. The election having been made, the father is under no legal obligation to them, and that, supposing that he may have received a benefit. *Hetfield* v. *Dow,* 3 *Dutcher* 440.

The father being under no legal obligation to the firm, the assignment of his interest in the judgment was purely volun-tary. But a voluntary assignment is not allowed to prevail against those who were creditors prior to the assignment. 1 *Story's Eq. Jur.,* § 381.

*Bona fides* is not enough in such a case, the assignment must be made on valuable consideration; and here the father received no benefit from his assignment.

But in consequence of the fraud in affixing the words "and Son," to the contract with the Montclair Railway Com-pany, the entire beneficial interest must be considered to be in Charles H. Wheeler, and nothing valuable could be con-sidered as having passed, when said order was given to said firm, so far as said order or assignment was intended to embrace charges and debts that were prior to March 21st, 1870.

To postpone their claim to the claim of the complainants, can work them no injury; they have all their remedies unim-paired against the son.

It is claimed that over and above the $1689.64 to be paid to the firm of Bryant and Co., $250 should be paid out of the residue of the judgment for counsel fees. But if the order given before judgment be an equitable assignment to the full amount claimed, said firm ought to contribute propor-tionally to the expenses of a suit in which said firm were chiefly interested.

If this injunction is dissolved to the extent asked, the

case will be practically at an end. It might be desirable to obtain the answer of Bryant and Co., as well as of the defendants.

If the court is of the opinion that the complainants in this cause have any merits, they would beg leave to amend, without prejudice to the injunction, by making the members of the said firm parties, and by making such further amendments as will, without changing the nature of the case presented by the bill of complaint, enable the court to make a decree that would afford the complainants adequate relief.

THE CHANCELLOR.

The injunction in this case is against C. H. Wheeler, and his son C. H. Wheeler, junior, who are the only defendants. It is to restrain them from receiving a sum of money in the hands of Runyon and Leonard, who, as their attorneys-at-law, have collected it for them, and from permitting it to be paid to any one for them or on their behalf. The defendants have not answered, or applied to dissolve or modify the injunction.

The application is made by Bryant and Co., who claim to be creditors of C. H. Wheeler, junior, and ·to hold an order of C. H. Wheeler and Son, both defendants, on Runyon and Leonard, for the amount of this debt, to be paid out of the money collected by them. This order is dated and was presented to Runyon and Leonard before the injunction. The indebtedness to Bryant and Co., and the order to them are not stated in the bill, and as there is no answer, are shown by affidavits to which no objections is made by the complainants, who rebut them by a counter affidavit.

No one but a party to a suit can make any motion in it, except for the purpose of being made a party. The defendants only are enjoined. If they do not wish to be free from the injunction no one else can ask it for them. If it needs further action on the part of the defendants to authorize their attorneys to pay the money to Bryant and Co., the dissolution alone would be of no use to Bryant and Co.

If the defendants would authorize the money to be paid, they would apply for the dissolution or permit it to be applied for in their name.

If, on the other hand, Bryant and Co. have, as they claim, an order given and signed in good faith before the injunction, which in effect assigns these moneys or any part thereof to them, especially if accepted by these attorneys, they have their remedy against them, and Runyon and Leonard would be warranted and compelled to pay these moneys to them, and they would not pay them as the attorneys of Wheeler and Son, but by virtue of an assignment by which the moneys are claimed, not under, but adversely to them. If the moneys are not so assigned, the injunction ought not to be dissolved, except for want of equity appearing either on the face of the bill or by the denials of the answer.

The motion must be denied.